OPINION
{¶ 1} Juvenile-appellant David Definbaugh appeals the February 18, 2003 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, Juvenile Division, which adjudicated him a delinquent child and ordered him into the custody of the Tuscarawas County Job Family Services Department. Appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On November 22, 2002, Sgt. Andrew Watts of the Strasburg Police Department filed a Complaint, alleging appellant was a delinquent child as a result of his violating R.C. 959.13(A)(1), cruelty to animals. Appellant filed a Written Plea of Denial on December 14, 2002.
 {¶ 3} The trial court conducted an adjudicatory hearing on February 14, 2003. Terry Strein, Jr. ("TJ"), appellant's eleven year old cousin, testified on behalf of the State. A complaint alleging TJ was a delinquent child by reason of commission of the offense of cruelty to animals, was filed in the Tuscarawas County Court of Common Pleas, Juvenile Division, during the same period the instant complaint was filed against appellant. The complaint was based upon the same set of facts contained in appellant's complaint. Prior to appellant's adjudicatory hearing, TJ admitted to the charge.
 {¶ 4} TJ recalled he and appellant were outside when appellant wondered aloud what would happen if they placed kittens inside jars, and then smashed the jars on the train tracks. Thereafter, appellant gathered three six inch glass jars from a shed. TJ and appellant collected three kittens, and placed them into the glass jars. TJ testified he and appellant lifted the jars about chin high and dropped them onto the train tracks. TJ and appellant left the area, leaving the kittens on the train tracks.
 {¶ 5} Dan Aho, who was fifteen years old at the time of the adjudicatory hearing, testified he and appellant lived near each other and "hung out" together. Dan recalled he and appellant were riding their bikes when appellant told Dan he wanted to show him (Dan) something. Appellant took Dan to the train tracks where Dan observed three dead kittens. Appellant told Dan he had placed the kittens in jars and threw the jars up into the air and watched as they hit the ground. While appellant and Dan were at the train tracks, they saw someone approaching. Appellant began to throw the kittens into some branches, attempting to hide them.
 {¶ 6} Sgt. Watts testified the department received a call from Strasburg High School regarding the possible abuse of some animals. Sgt. Watts spoke with Mrs. Moser, a teacher at the high school, who told the officer Dan Aho had confided in her about kittens being placed in jars and then thrown onto the train tracks. Sgt. Watts proceeded to the scene where he observed "a bunch of broken glass," but no kittens. The following day, Sgt. Watts returned to the scene and upon closer examination, discovered two dead kittens, one of which was disfigured.
 {¶ 7} During the course of the investigation, appellant and TJ became suspects in the offense. Sgt. Watts interviewed appellant. Appellant initially described the incident as an accident, but ultimately admitted he and TJ put the kittens into the glass jars and smashed them on the train tracks.
 {¶ 8} At the adjudicatory hearing, appellant testified he did not have any involvement in the offense. Appellant testified he had only seen the kittens twice before TJ took appellant to the train tracks and showed him the dead kittens. Appellant testified he admitted involvement in the offense to the police because one of the police officers threatened him.
 {¶ 9} Appellant attempted to present three character witnesses pursuant to Evid. R. 404(A)(1). The State objected on relevancy grounds. The trial court sustained the State's objection and ruled the evidence inadmissible. Appellant offered defendant's exhibits 1, 2, and 3, written statements by the witnesses, which appellant proffered into evidence. The trial court accepted the exhibits.
 {¶ 10} On the record, the trial court found appellant committed the acts for which he was charged and found him to be delinquent based upon those facts. The trial court memorialized its ruling via Judgment Entry filed February 18, 2003.
 {¶ 11} It is from this judgment entry appellant appeals, raising the following assignments of error:
 {¶ 12} "I. The Adjudication Of The Appellant As A Delinquent Child Was Against The Manifest Weight Of The Evidence.
 {¶ 13} "II. The Trial Court Committed Prejudicial Error In Sustaining The State's Objection To Not Allowing Witnesses Of Alleged Delinquent To Testify That He Loved Animals And Was Always Good To Them Contrary To Evidence Rule 404(A)(1)."
 I {¶ 14} In his first assignment of error, appellant maintains the trial court's adjudication of him as a delinquent child was against the manifest weight of the evidence.
 {¶ 15} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine Awhether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541 citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses= demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, syllabus 1, 227 N.E.2d 212.
 {¶ 16} Appellant contends his own testimony, denying any involvement in the abuse and death of the kittens, contradicted the trial court's finding he committed a violation of R.C. 959.13(A)(1). We disagree.
 {¶ 17} At the adjudicatory hearing, the State presented three witnesses who testified as to appellant's involvement in the offense. Because the trial court, as the trier of fact, is in the best position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and credibility of the witnesses are primarily for the trier of fact. The trial court was free to accept or reject any or all of the testimony of the witnesses. We find the testimony of TJ, detailing his and appellant's participation in the event as well as the testimony of the other witnesses was sufficient, competent and credible evidence from which the trial court could find appellant inflicted fatal injury upon the kittens. The trial court's adjudication was not against the manifest weight of the evidence.
 {¶ 18} Appellant's first assignment of error is overruled.
 II {¶ 19} In his second assignment of error, appellant submits the trial court erred in excluding the character evidence of appellant's three witnesses.
 {¶ 20} Evid.R. 404(A)(1) provides:
 {¶ 21} "(A) Character evidence generally
 {¶ 22} "Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:
 {¶ 23} "(1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable."
 {¶ 24} Upon completion of appellant's cross-examination by the State, the State advised the trial court of defense counsel's intent to present character witnesses. The following conversation occurred:
 {¶ 25} "MR. DEEDRICK [PROSECUTOR]: Fred, wait a minute. You're going to start bringing in witnesses about —
 {¶ 26} "MR. BOHSE [DEFENSE COUNSEL]: Yes.
 {¶ 27} "MR. DEEDRICK: Your Honor, at this point, I understand that Attorney Bohse is going to present a litany of individuals that are going to testify about their belief that David loved animals and was always appropriate with animals. I wanted to interpose that I would object to the relevance of that testimony in terms of whether or not this criminal act was conducted. If the Court is inclined to hear that evidence, I intend to present three to four witnesses that will testify to the contrary that they've observed other incidences of abuse by David of animals, in particular, kittens.
 {¶ 28} "THE COURT: All right. First of all, give me the names of your witnesses, Fred, and he's referring to so we can be specific, please.
 {¶ 29} "MR. BOHSE: Yes. Denny Smith, your Honor, Kasey Wallace and a Deborah Jewell.
 {¶ 30} "THE COURT: Is the prosecutor's characterization of their testimony accurate as far as you're concerned?
 {¶ 31} "MR. BOHSE: Yes. We would offer their testimony, your Honor, pursuant to Evidence Rule 404(A)(1) which deals with testimony concerning the character or propensity of a defendant to commit a particular criminal act, ie, assault in this case cruelty to animals.
* * *
 {¶ 32} "THE COURT: Do any of these three individuals have any knowledge whatsoever as to what took place on the date in question?
 {¶ 33} "MR. BOHSE: No, they do not, your Honor.
* * *
 {¶ 34} "THE COURT: Mr. Bohse, am I to understand then that the evidence of these three witnesses would be offered to show that David would have acted in conformity with what these witnesses know of him?
 {¶ 35} "MR. BOHSE: Or that the actions he's accused of would not be in conformity with what they know of him, your Honor, that he's not cruel to animals.
 {¶ 36} "THE COURT: All right. Then I'm gong to grant the state's motion and I'm going to not allow you to present that evidence today.
 {¶ 37} "MR. BOHSE: Your Honor, the witnesses I called had furnished me witness statements in advance. I would ask that those could be marked as exhibits and I would request — and I would present them to the Court as a proffer as to what each of those witnesses would testify to.
* * *
 {¶ 38} "THE COURT: Okay.
 {¶ 39} "MR. BOHSE: Your Honor, then I would offer as Defendant's Exhibits 1, 2, and 3 as written proffers of what Ms. Wallace, Ms. Smith (sic) and Ms. Jewell would testify to if in fact they were allowed to testify.
 {¶ 40} "THE COURT: All right. We'll accept those things into the record."
 {¶ 41} Tr. at 42-44.
 {¶ 42} In a criminal prosecution an accused may seek to offer appropriate evidence supporting his or her good character to establish he or she, on the particular occasion of the crime charged, acted in conformity with his good character and did not commit the crime in question. State v. Nobles (1995), 106 Ohio App.3d 246. Accordingly, we find it was error to exclude the evidence pursuant to Evid.R. 404(A)(1). The proffered evidence would have shown appellant's propensity not to hurt animals. However, in light of the other evidence noted supra, we find such error to be harmless pursuant to Evid.R. 103.
 {¶ 43} Appellant's second assignment of error is overruled.
 {¶ 44} The judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.